**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HARADEN MOTORCAR CORPORATION d/b/a
MOHAWK HONDA,

                              Plaintiff,

v.

NICHOLAS S. BONARRIGO,

                              Defendant.

1:19-cv-01079 (BKS/DJS)

**Appearances:**

*For Plaintiff:*
James T. Towne, Jr.
Town, Ryan & Partners, P.C.
P.O. Box 15072
450 New Karner Road
Albany, NY 12212-5072

*For Defendant:*
James R. Peluso
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Haraden Motorcar Corporation d/b/a Mohawk Honda brings this diversity action

against Defendant Nicholas S. Bonarrigo, alleging the following claims under New York law

stemming from Defendant's employment with Plaintiff: (1) conversion (First Claim), (2)

violation of the faithless servant doctrine (Second Claim), (3) unjust enrichment (Third Claim),

(4) fraud and deceit (Fourth Claim), and (5) breach of fiduciary duty (Fifth Claim). (Dkt. No.

12). Defendant moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil

Procedure 12(b)(6). (Dkt. No. 13). The parties have filed responsive briefing. (Dkt. Nos. 16, 18).

For the following reasons, Defendant's motion is granted in part.

## II.    FACTS[1]

Plaintiff owns Mohawk Honda, an automotive dealership in Scotia, New York. (Dkt. No.

12, ¶¶ 7–8). Plaintiff employed Defendant as the general manager of Mohawk Honda from

February 1, 2012 until August 21, 2018. (*Id.* ¶ 9). As general manager, Defendant was "in

control of day-to-day affairs and operations" at Mohawk Honda. (*Id.* ¶ 10). This included control

over "financial affairs" and "financial information." (*Id.* ¶ 68).

Beginning on February 1, 2012, Defendant was paid an "annual base salary" of $220,000

along with 8% of net profits from January through December. (*Id.* ¶ 12). "On or about May 1,

2012," Defendant's annual base salary was reduced to $119,600. (*Id.* ¶ 13). Defendant's share of

net profits "from January through November" was increased to 10%. (*Id.*).

On or about December 31, 2013, without Plaintiff's "knowledge or consent," Defendant's

annual base salary was increased to $240,000, and Defendant's share of net profits was reduced

to 6.5%. (*Id.* ¶ 14). As of the December 2013 change in compensation until his termination in or

around August 2018, Defendant's "commission calculation did not include . . . the month of

December" and was only calculated based on "net profits from January to November for each

calendar year of Defendant's employment." (*Id.* ¶ 15).

After Defendant's employment with Plaintiff was terminated in or around August 2018,

Plaintiff discovered "through a forensic accounting investigation that between Defendant's date

---

[1] The facts are taken from the Amended Complaint. (Dkt. No. 12). The Court will assume the truth of, and draw reasonable inferences from, those well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

of hire" until Defendant's termination that "Defendant received overpayments in compensation, commission, and reimbursable expenses" that were "neither authorized or known to Plaintiff." (*Id.* ¶ 16). Defendant "caused to be entered" into Plaintiff's "books and records" various forms of overpayment in a deceptive way that "obscure[d]" their details. (*Id.* ¶¶ 16, 63, 66–67). As described in further detail below, Plaintiff alleges three broad categories of overpayment that Defendant received during his employment: (1) the strategic inflation of profits and losses, (*id.* ¶¶ 18–21), (2) undue reimbursable expenses, (*id.* ¶¶ 24–31), and (3) other excess and "otherwise unexplained" compensation. (*Id.* ¶¶ 22–25).

### A.    Profit/Loss Inflation

Plaintiff alleges that Defendant was overcompensated because he inflated net profits from January to November and inflated "net losses in December," the month excluded from Defendant's commission compensation. (*Id.* ¶¶ 15–17, 42, 62). To accomplish this, Defendant engaged in various actions from 2013–18 and "obscure[d] the details thereof." (*Id*. ¶¶ 18, 62, 76). These actions increased the compensation Defendant received through commission above what was he entitled to. (*See id.* ¶¶ 17, 20–21).

For instance, Defendant would carry an excessive "amount of prepaid taxes and expenses on balance sheets from January to November, which were subsequently written off as an expense in December." (*Id.* ¶¶ 18a, 62a). Defendant also overstated fixed assets by recording items as such from January to November only to write them off in December as "repairs, maintenance, [and] data processing" in addition to other items. (*Id.* ¶ 18e). Defendant also failed to "record depreciation expenses from January to November and only record[ed] depreciation expenses in December to inflate net profits." (*Id.* ¶ 18f). Plaintiff alleges other specific schemes that sought to inflate net profits "from January to November," including "improper recording of payroll expenses" and "payroll accruals," (*id.* ¶¶ 18g, 18h), while inflating net losses in December. (*Id.*

¶¶ 18–20, 42, 62). As a result of his conduct, Defendant received a 13.1% commission in 2013, 8.5% in 2014, 15.1% in 2015, and 22.8% in 2016, 13.1% in 2017, and 7.1% in 2018. (*Id.* ¶ 20). Plaintiff did not know or authorize this conduct. (*Id.* ¶ 19). In total, Defendant received $644,858 in excess commission from 2013–18. (*Id.* ¶ 21).

B.   **Undue Reimbursements**

Plaintiff's "forensic accounting investigation further uncovered that" from 2016–18 "Defendant invoiced expense reimbursements without providing sufficient documentation, proof and/or receipts to substantiate" the invoiced expenses. (*Id.* ¶¶ 26, 43, 63–64). Defendant caused "inaccurate, misleading, and false entries" to be entered into "Plaintiff's books and financial records" to "disguise and deceive . . . Plaintiff as to the true nature" of the reimbursements. (*Id.* ¶ 64). Plaintiff did not know or consent to Defendant's invoicing reimbursement practices. (*Id.* ¶ 26). Defendant "wrongfully received a total" of $79,405.68 in reimbursements. (*Id.* ¶¶ 27–30). Plaintiff suffered "monetary loss" as a result of these "entries and invoiced expenses" (*Id.* ¶¶ 31). Defendant knew he was "misrepresent[ing] the true value of his reimbursable expenses" during this time period. (*Id.* ¶¶ 64, 66–67).

C.   **Other Excess and Unexplained Compensation**

Plaintiff's forensic accounting investigation also uncovered that Defendant received $2,209 in excess compensation from 2013 to 2018 that Defendant "was not entitled to receive as compensation." (*Id.* ¶¶ 22–23). In addition, Plaintiff's forensic accounting investigation uncovered that Defendant received "otherwise unexplained compensation from 2013-15" that "he was not entitled to receive." (*Id.* ¶¶ 24, 65). This "unexplained compensation" totaled $189,111. (*Id.* ¶ 25). "Defendant knew" he was "misrepresent[ing] the true value of his compensation," that he was receiving "overpaid and unexplained compensation," and "disguised

. . . the true value of his compensation" while employed as Plaintiff's General Manager. (*Id.* ¶¶ 65–67). Plaintiff did not know or consent to any of this compensation. (*Id.* ¶¶ 23–25).

Defendant "wrongfully took from Plaintiff a total of" $915,583.68 from January 1, 2013 to August 21, 2018. (*Id.* ¶ 32). Plaintiff has demanded Defendant return the funds but Defendant "continues to exercise dominion and control over Plaintiff's said funds." (*Id.* ¶¶ 37, 53–55, 69). Plaintiff requests compensatory and punitive damages, (*id.* at 20), and claims he is entitled to forfeiture of Defendant's "salary, benefits and commission paid by Plaintiff to Defendant for the period of Defendant's unfaithfulness," which Plaintiff estimates is no less than $3,042,705.68. (*Id.* ¶ 48).

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   Documents to Consider in Deciding Motion to Dismiss

Defendant attaches several documents in support of his motion: (1) a declaration sworn by Defendant, (2) an email apparently sent on December 31, 2013, (3) a declaration sworn by

Defendant that was submitted with Defendant's prior motion to dismiss in this case, (4) the original complaint filed in this case, (5) a state court complaint Plaintiff filed in a separate lawsuit,[2] and (6) and an affidavit submitted by Julie A. Harrison, the defendant in that lawsuit. (Dkt. Nos. 13-2, 13-3). Plaintiff has submitted a demand letter apparently sent to Defendant prior to the filing of this lawsuit. (Dkt. No. 16-1, at 85–86).

Thus, as a preliminary matter the Court must decide which of these documents, if any, to consider in resolving this motion. "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

---

[2] *Haraden Motorcar Corporation v. Julie A. Harrison*, New York State Supreme Court, Schenectady County, Index No. 2019-1942.

The Court declines to consider Defendant's declaration, the December 31, 2013 email, the affidavit submitted with the prior motion to dismiss, and the Harrison affidavit. The Amended Complaint does not "refer to" any of these documents and Plaintiff "apparently did not rely on [it] in drafting" the Complaint. *Chambers*, 282 F.3d at 154. Moreover, "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants . . . in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Accordingly, the Court declines to consider these documents.

Next, the Court declines to consider the original complaint in resolving the present motion. (*See* Dkt. No. 13-3, at 3–14). Defendant argues—without citation to authority—that because Plaintiff deleted "upon information and belief" from allegations made in the original complaint those allegations should still be considered as though pled upon information and belief when interpreting the Amended Complaint. (Dkt. No. 13-1, at 11–12 & n.2; *see also* Dkt. No. 8-3, at 5–6). The Court rejects this argument. First, "[i]t is well established that an amended complaint ordinarily super[s]edes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998)). Second, even considering those allegations as though pled upon information and belief, the contours of the alleged schemes are likely "within [Defendant's] knowledge" and the allegations in the Amended Complaint "support[] a strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Accordingly, the Court will not consider the original complaint.

The Court also declines to consider the state court complaint that Plaintiff apparently filed against a different defendant. (Dkt. No. 13-3, at 38–50). Defendant argues that the allegations there "mirror[] the allegations" in this case, (Dkt. No. 13-1, at 12), and that this reveals a "shotgun approach to litigation" that "fails to comply with [Federal] Rule [of Civil Procedure] 8." (*Id.*). While the Court "may take judicial notice of the fact that the state-court complaint contained certain statements," *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015), the Court declines to compare the substance of Amended Complaint's allegations with those in the state-court proceedings. The Court will decide the present motion on the merits of the Amended Complaint's allegations alone.

Finally, the Court declines to consider the demand letter submitted by Plaintiff. (Dkt. No. 16-1, at 85–86). Plaintiff's letter was neither attached to the complaint "as an exhibit" nor incorporated by reference. *Nicosia*, 834 F.3d at 230. Moreover, the Court does not find the letter "'integral' to the complaint," *id.* (quoting *DiFolco*, 622 F.3d at 111), or that Plaintiff relied "on the terms and effects of the document in drafting the complaint." *Id.* at 131 (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).[3] Accordingly, the Court will not consider it in deciding the present motion.

### B.     The Applicable Pleading Standard

Defendant argues that all of Plaintiff's claims should be subject to Federal Rule of Civil Procedure 9(b)'s pleading requirement because each claim "is premised on alleged fraudulent conduct." (Dkt. No. 13-1, at 7). Plaintiff responds that Rule 8 applies to its non-fraud claims

---

[3] While Plaintiff alleges that it demanded return of the excess funds Defendant received, (Dkt. No. 12, ¶¶ 37, 69), it does not allege any facts concerning how that demand was made.

because the its Amended Complaint is "carefully structured" to distinguish between its fraud, tort, and contract claims. (Dkt. No. 16, at 8).

Under New York law, a fraud claim requires a plaintiff to plead that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)).

When a complaint contains allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995); Fed. R. Civ. P. 9(b). "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Although "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent," which may be established "either (a) by alleging facts to show that [the] defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)) (first alteration in original) (quoting *Acito*, 47 F.3d at 52; and citing Fed. R. Civ. P. 9(b))). Applying Rule 9(b), however, "must be reconciled with [R]ule 8, which requires and short and concise statement of

claims." *Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir. 1974); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 540 (S.D.N.Y. 2007).

By its terms, Rule 9(b) applies to 'all averments of fraud.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b)'s wording is "cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *See id.* (holding that Rule 9(b)'s heightened pleading standard applies to securities fraud claims "insofar as the claims are premised on allegations of fraud" even where "[f]raud is not an element or a requisite to [the] claim"); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud."); *see also Demirovic v. Ortega*, No. 15-cv-327, 2016 WL 11472745, at *10, (E.D.N.Y. Sept. 15, 2016)[4] (applying Rule 9(b) and explaining that "defendants have alleged that the plaintiffs converted . . .  profits through the operation of the fraudulent scheme, rendering the conversion claim inherently linked to the alleged fraud."), *aff'd*, 771 F. App'x 111 (2d Cir. 2019).

Here, Plaintiff's allegations relating to Defendant's profit/loss inflation and undue reimbursements "sound[] in fraud," even though some of Plaintiff's claims do not contain fraud as an element. *Rombach*, 355 F.3d at 166, 170; *see also Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008). Plaintiff alleges that Defendant caused information "to be entered upon the books to deceive and obscure the details" of his scheme, alleging "devious, wrongful and deceitful" actions to inflate net profits. (Dkt. No. 12, ¶¶ 16, 18). Plaintiff also

---

[4] No Lexis citation available.

alleges that Defendant falsely recorded "items as fixed assets from January to November" only to write them off in December. (*Id.* ¶ 18e). A significant portion of the Amended Complaint describes various ways by which Defendant would falsely record expenses to inflate net gains from January to December and inflate losses in the month of December, the month Defendant's compensation structure excluded. (*See id.* ¶¶ 17–21). *See Rombach*, 355 F.3d at 172 (rejecting the plaintiffs' argument that their claims did "not sound in fraud" where the "wording and imputations of the complaint are classically associated with fraud," including allegations that a document at issue was "inaccurate *and* misleading" and contained "*untrue* statements of material facts," and "materially false and misleading written statements") (quotation marks omitted).

Here, Plaintiff's allegations include similar language and allege similar conduct. (*See e.g.*, Dkt. No. 12, ¶ 31 ("All of the aforesaid entries and invoiced expenses constituted misrepresentations and concealments of material facts that were justifiably relied upon by Plaintiff and resulted in monetary loss to Plaintiff."); *id.* ¶ 16 (alleging that Plaintiff caused "overpayment in compensation, commission, and reimbursable expenses" to be entered into Plaintiff's "books and records . . . so as to deceive and obscure the details thereof"); *id.* ¶ 17e (alleging that Plaintiff would "[o]verstat[e] fixed assets by recording items as fixed assets from January to November only to be written off in December as repairs, maintenance, data processing . . . in addition to other items"). Thus, because "the conduct alleged" with respect to the profit/loss inflation and reimbursement schemes "sounds in fraud," *Romach*, 355 F.3d at 167, 171, the heightened pleading standard of Rule 9(b) applies to Plaintiff's (1) fraud, (2) conversion, (3) faithless servant doctrine, (4) unjust enrichment, and (5) breach of fiduciary duty claims. *See Daly*, 30 F. Supp. 2d at 414 (finding claim of conversion "subject to the pleading requirements of Rule 9(b)"); *see also Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d

269, 288 (E.D.N.Y. 2010) (applying Rule 9(b) to breach of fiduciary duty, conversion, and unjust enrichment claims). Thus, the Court will review Plaintiff's claims and allegations relating to the profit/loss inflation and reimbursement schemes under the standard set forth in Rule 9(b).

The Court, however, finds Rule 9(b) does not apply to Plaintiff's non-fraud claims that allege Defendant was paid excess and "otherwise unexplained compensation." (Dkt. No. 12, ¶¶ 22–25). Those allegations do not allege "fraud as an integral part of the conduct." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 269 (S.D.N.Y. 2004)). Moreover, Defendant's overpayment in compensation is not rooted in the same conduct as the allegations relating to profit/loss inflation and undue reimbursement. *See Mayatextil, S.A. v. Liztex U.S.A., Inc.*, No. 92-cv-4528, 1993 WL 51094, at *5, 1993 U.S. Dist. LEXIS 1959, at *14–15 (S.D.N.Y. Feb. 24, 1993) (declining to apply Rule 9(b) to a conversion claim that did "not allege that defendants' actions were fraudulent"); *Exec. Photo, Inc. v. Norrell*, 756 F. Supp. 798, 800 (S.D.N.Y. 1991) ("Rule 9(b) . . . is explicitly limited to averments of fraud or mistake, neither of which is found in plaintiff's conversion claim."). Accordingly, the Court will not apply Rule 9(b) to Plaintiff's non-fraud allegations relating to Defendant's excess and otherwise unexplained compensation.

### C.   Fraud and Deceit (Fourth Claim)

Defendant argues that Plaintiff fails to plead fraud in accordance with the requirements of Rule 9(b). (Dkt. No. 13-1, at 8–13). Plaintiff responds that he has pled each element of fraud with sufficient particularity. (Dkt. No. 16, at 9–13). The Court agrees with Plaintiff, in part. As described above, the Amended Complaint alleges three categories of conduct that led to Defendant being overpaid: (1) profit/loss inflation; (2) undue reimbursements; and (3) other excess and unexplained compensation. (Dkt. No. 12). The Court finds that Plaintiff has pled the

first two categories but not the third—the excess and unexplained compensation—with sufficient particularity to withstand dismissal under Rule 9(b).

### 1.    Profit/Loss Inflation and Undue Reimbursement

With respect to the profit/loss inflation and undue reimbursement schemes, Plaintiff has "specified the statements [it] contends were fraudulent." *Mills*, 12 F.3d at 1175. Here, Plaintiff alleges that Defendant "entered or caused to be entered inaccurate, misleading and false entries in Plaintiff's books and financial records." (Dkt. No. 12, ¶ 63). *See Brooke v. Schlesinger*, 898 F. Supp. 1076, 1086 (S.D.N.Y. 1995) ("The financial reports and other communications were fraudulent in that they did not accurately reflect the company's financial condition.").

Moreover, Plaintiff specifically alleges the various schemes by which Defendant would increase his annual compensation. (*Id.* ¶¶ 18, 62). *See Solv-Ex Corp. v. Quillen*, No. 96-cv-6057, 1997 WL 452023, at *2, 1997 U.S. Dist. LEXIS 11441, at *6 (S.D.N.Y. Aug. 7, 1997) (finding Rule 9(b)'s particularity requirement satisfied where the "basic nature of the fraudulent scheme [was] alleged"). For instance, here, Plaintiff specifically alleges that Defendant overstated fixed assets from January to November, writing them off in December as repairs, maintenance, and data processing. (*Id.* ¶¶ 18e, 62). Defendant also allegedly failed to record "depreciation expenses from January to November" and only recorded them in December to inflate net profits for the time period he received a percentage of the dealership's net profits. (*Id.* ¶¶ 18f, 62). *See Brooke*, 898 F. Supp. at 1088 (S.D.N.Y. 1995) (finding the plaintiff alleged fraud with sufficient particularity where the complaint alleged that "as part of a plan to loot the company," the defendants directed employees "to engage in invoicing fraud" by "invoic[ing] orders before they were due to be shipped, billed the same order more than once, and invoiced orders that had never been made"). Plaintiff also separately alleges that Defendant "misrepresented the true value of his reimbursable expenses" during the time Plaintiff employed him. (*Id.* ¶ 63). *Swig Weiler &*

*Arnow Mgmt. Co. v. Stahl*, No. 89-cv-2290, 1990 WL 250820, at *2, 1990 U.S. Dist. LEXIS 17548, at *5–6 (S.D.N.Y. Dec. 28, 1990) ("[T]he complaint alleges that [one defendant] submitted invoices to [the plaintiff] that misrepresented the value of the services performed. These false or inflated invoices constitute the misrepresentations to plaintiff.").

For each of these alleged actions, Plaintiff provides specific "amounts involved in the alleged misrepresentation[s]," *see Felton*, 508 F.2d at 581, that Defendant earned for each of the relevant years. (*Id.* ¶¶ 21–30, 32). *See Mishkin v. Ageloff*, No. 97-cv-2690, 1998 WL 651065, at *29, 1998 U.S. Dist. LEXIS 14890, at *88 (S.D.N.Y. Sept. 23, 1998) (finding allegations provided "more than sufficient individual detail to satisfy Rule 9(b)'s pleading requirements" where the complaint provided, "specific dates, specific amounts, specific conduct and, when read against the equally detailed discussion of the precise nature of the fraud, why this activity was fraudulent").

While Plaintiff does not provide specific dates for the fraudulent acts, to satisfy Rule 9(b), "a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Manavazian v. Atec Grp., Inc.*, 160 F. Supp. 2d 468, 477 (E.D.N.Y. 2001) (quoting *In re Revlon, Inc. Secs. Litig.*, No. 99-cv-10192, 2001 WL 293820, at *8, 2001 U.S. Dist. LEXIS 3265, at *22 (S.D.N.Y. Mar. 27, 2001)). Moreover, Plaintiff does allege the timeframe surrounding some of the alleged fraudulent acts—specifically, that Defendant would channel losses to December and gains from January to November. (Dkt. No. 12, ¶¶ 17–21). *See Lenco Diagnostic Labs., Inc. v. McKinley Sci., Inc.*, No. 15-cv-1435, 2016 WL 8711341, at *3, 2016 U.S. Dist. LEXIS 137700, at *7 (E.D.N.Y. Sept. 30, 2016) (finding complaint sufficient under Rule 9(b) where it alleged "specific months during most of the times when the fraudulent

statements were made"); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-md-2450, 2015
WL 7018369, at *20, 2015 U.S. Dist. LEXIS 155383, at *55 (S.D.N.Y. Nov. 12, 2015) ("[T]he
Court agrees with Plaintiffs that they do not need to provide the date and time of every allegedly
fraudulent statement.").

Plaintiff's allegations also suffice to plead Defendant's fraudulent intent. Plaintiff has
alleged that Defendant had "both motive and opportunity to commit fraud." *Shields*, 25 F.3d at
1128. Defendant was the automotive dealership's general manager and controlled Plaintiff's
"day-to-day affairs" and the dealership's "financial affairs, financial information, and general
operations." (Dkt. No. 12, ¶¶ 9–10). Plaintiff also describes Defendant's commission pay
structure in which his "commission calculation did not include . . . the month of December and
was only calculated and based on net profits from January to November for each calendar year of
Defendant's employment." (*Id.* ¶ 15). Plaintiff then alleges specific schemes, consistent with the
incentives underlying Defendant's pay structure, that describe how Plaintiff inflated profits from
January to November and inflated losses during the month of December. (*Id.* ¶¶ 18–20). Thus,
Plaintiff has sufficiently alleged that Defendant had the opportunity to commit fraud. *See*
*Shields*, 25 F.3d at 1130 ("Opportunity would entail the means and likely prospect of achieving
concrete benefits by the means alleged."). Plaintiff has also sufficiently pled motive: as a result
of these schemes, Plaintiff received more compensation than he otherwise would have. (*Id.* ¶¶
20–21).

Plaintiff has also adequately pled "circumstantial evidence to indicate conscious
misconduct by the defendant[]." *Shields*, 25 F.3d at 1130 (citing *Cosmas v. Hassett*, 886 F.2d 8,
13 (2d Cir. 1989)); *see also Eternity Glob.*, 375 F.3d at 187. For instance, regarding the
profit/loss inflation scheme, Plaintiff has alleged how Defendant would channel profits to the

months of January to November, channel losses to December, and "obscure the details thereof."
(Dkt. No. 12, ¶ 18). With respect to Defendant's reimbursement scheme, Plaintiff alleges that
Plaintiff made "inaccurate, misleading and false entries in Plaintiff's books and financial records
in an effort to disguise and deceive" Plaintiff about his reimbursable expenses, (*id.* ¶ 64), and
that Defendant knew these misrepresentations were false and misleading. (*Id.* ¶ 65). As a result,
Defendant received thousands of dollars in reimbursements to which he was not entitled. (*Id.* ¶¶
27–30). Accordingly, Plaintiff has sufficiently alleged Defendant's fraudulent intent. *See Cohen*
*v. Koenig*, 25 F.3d 1168, 1174 (2d Cir. 1994) (finding amended complaint "sufficient to satisfy
Rule 9(b)'s requirements as to scienter").

Plaintiff has also sufficiently pled reasonable reliance on Defendant's misrepresentations.
Defendant argues that the information "relied upon by plaintiff now was available at all times
from 2012-2018 through . . . review of the company's books and records."[5] (Dkt. No. 13-1, at
16). The Court disagrees. "Whether a fraud plaintiff's reliance was reasonable depends on 'the
entire context of the transaction, including factors such as its complexity and magnitude, the
sophistication of the parties, and the content of any agreements between them.'" *Minnie Rose*
*LLC v. Yu*, 169 F. Supp. 3d 504, 519 (S.D.N.Y. 2016) (quoting *Woori Bank v. RBS Sec., Inc.*,
910 F. Supp. 2d 697, 701 (S.D.N.Y. 2012)); *Woori Bank*, 910 F. Supp. 2d at 701 (explaining that
the reliance element is "often a question of fact for the jury rather than a question of law for the
court" (quoting *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d
Cir. 2011))).

---

[5] To support this argument, Defendant cites to Harrison's affidavit, which as noted, the Court declines to consider in
deciding this motion. *See supra* Section IV.A.

To be sure, when "sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Hyosung Am., Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 78–79 (2d Cir. 1998) (explaining that this "principle is more relevant in cases" that "involve the purchase of a business" (quoting *Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994))). However, "[d]ecisions holding that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts." *Keywell Corp.*, 33 F.3d at 164 (quoting *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80–81 (2d Cir. 1980), *abrogated in part on other grounds by Peltz v. SHB Commodities*, 115 F.3d 1082, 1090 (2d Cir. 1997)).

Here, no allegations suggest Plaintiff was "placed on guard or practically faced with the facts" of the alleged fraud. *See Hyosung Am., Inc.*, 137 F.3d at 78. Plaintiff has alleged with specificity that Defendant took various forms of compensation that he was not entitled to receive over the years of his employment, (Dkt. No. 12, ¶¶ 18–31), and that Defendant's alleged conduct was discovered through a "forensic accounting investigation." (Dkt. No. 12, ¶ 16). *See Allstate Ins. Co. v. Bogoraz*, 818 F. Supp. 2d 544, 550 (E.D.N.Y. 2011) (finding reasonable reliance where the plaintiff alleged that it made payments to a defendant that it "was not entitled to receive").

In sum, with respect to the profit/loss inflation and undue reimbursement schemes, Plaintiff has alleged "the underlying time, place and content of the facts upon which the fraud claim is based with particularity." *Id.*

### 2.      Unexplained Compensation

Plaintiff, however, has failed to allege that Defendant received excess and "otherwise unexplained compensation" with sufficient particularity. (*See* Dkt. No. 12, ¶¶ 22–25). Plaintiff

alleges that Defendant received "unexplained compensation" and specifies the amounts

Defendant allegedly received. (*Id.* ¶¶ 22–23). These allegations, however, do not "specify

statements that [P]laintiff contends were fraudulent," "identify the speaker," "state where and

when the statements were made," or "explain why the statements were fraudulent." *Mills*, 12

F.3d at 1175 (citing *Cosmas*, 886 F.2d at 11); *see also Abraham v. Am. Home Mortg. Servicing,

Inc.*, 947 F. Supp. 2d 222, 231 (E.D.N.Y. 2013) ("[T]he second amended complaint does not

specify a single fraudulent statement."). Accordingly, Plaintiff's fraud claim is dismissed as to

the allegations regarding Defendant's excess and otherwise unexplained compensation. (*See* Dkt.

No. 12, ¶¶ 22–25, 65).

### D.    Conversion (First Claim)

#### 1.    Merits

Defendant moves to dismiss Plaintiff's conversion claim, arguing that it fails Rule 9(b)'s

heightened pleading standard and that, alternatively, it fails under Rule 8. (Dkt. No. 13-1, at 8–

15). Plaintiff responds that he has met the necessary pleading requirements. (Dkt. No. 16, at 9–

15). Under New York Law, "[c]onversion is the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights."

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (alteration in original)

(quoting *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44

(1995)). To plead conversion, a plaintiff must allege: "(1) the property subject to conversion is a

specific identifiable thing; (2) plaintiff had ownership, possession or control over the property

before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in

question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ellington

Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011)

(quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).

Plaintiff sufficiently pleads conversion.[6] The Amended Complaint alleges specific schemes by which Defendant took money from Plaintiff that he was not authorized to take, including that Defendant inflated Plaintiff's net profits from January to November and inflated net losses in December to increase his compensation via commission. (Dkt. No. 12, ¶¶ 17–21). Plaintiff also alleged that Defendant submitted for reimbursements without providing sufficient—or sometimes any—documentation. (*Id.* ¶¶ 26–30). Accordingly, Plaintiff has stated a conversion claim.

### 2.    Statute of Limitations

Defendant argues that Plaintiff's claim for conversion related to conduct that occurred before August 30, 2016 should be dismissed as time-barred. (Dkt. No. 13-1, at 16–17; Dkt. No. 18, at 14–15). Plaintiff agrees that the statute of limitations for conversion is three years but argues that it "begins to run when the plaintiff demands the return of property and the defendant refuses." (Dkt. No. 16, at 16). Defendant did not respond to that argument.

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint. *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). "New York's statute of limitations for conversion claims is three years . . . and accrues at the time of conversion regardless of a plaintiff's knowledge of the conversion." *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 478 (S.D.N.Y. 2014) (citing N.Y. C.P.L.R. 214(3)); *see also Culwick v. Wood*, 384 F. Supp. 3d 328, 342 (E.D.N.Y. 2019) ("[A]ccrual runs from the date the conversion takes place and not from

---

[6] As explained above, the allegations relating to excess and "unexplained compensation" are subject only to Rule 8's pleading requirement and not Rule 9(b)'s heightened standard.

discovery or the exercise of due diligence to discover." (quoting *Vigilant Ins. Co. of Am.*, 87

N.Y.2d at 44)).  However, where the defendant obtained possession of the property lawfully, a

conversation claim accrues only after the plaintiff's demand for the property is refused by the

defendant. *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc*, 87 F.3d 44, 49 (2d Cir.

1996) (citing *White v. City of Mount Vernon*, 221 A.D.2d 345, 346 (2d Dep't 1995)); *see also*

*Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311 (1991); *Republic of Turkey v.*

*Christie's Inc.*, No. 17-cv-3086, 2019 WL 6619618, at *3–4, 2019 U.S. Dist. LEXIS 210774, at

*10–11 (S.D.N.Y. Dec. 2, 2019).

Here, Plaintiff's original complaint was filed on August 30, 2019. (Dkt. No. 1).

Accordingly, any alleged conversion that occurred prior to August 30, 2016 would be time-

barred unless the defendant had obtained the property lawfully. *See City of Syracuse v. Loomis*

*Armored US, LLC*, 900 F. Supp. 2d 274, 292–93 (N.D.N.Y. 2012). Thus, to the extent Plaintiff's

"conversion claim seeks recovery for violations more than three years before the Complaint was

filed, that portion of the claim would be time-barred." *United Teamster Fund, LLC*, 39 F. Supp.

3d at 478. However, to the extent Plaintiff's claim seeks recovery of property that was obtained

lawfully by the Defendant, the three-year statute of limitations period would not begin to run

until the Defendant refused a demand to return the property. Because this determination cannot

be made from the face of the Amended Complaint, Defendant's motion to dismiss Plaintiff's

conversion claims based on the statute of limitations is denied.[7]

---

[7] Defendant also argues that Plaintiff's fraud and faithless servant doctrine claims are "related to conduct that occurred six years before the filing of the complaint" and "should be dismissed." (Dkt. No. 13-1, at 17). Plaintiff responds that it "only seeks relief for damages incurred from 2013 to 2018" (*i.e.*, within the limitations period) (Dkt. No. 16, at 17). Because it is not clear when in 2013 some of the alleged conduct occurred, the statute of limitations defense cannot be decided "on the face" of the Amended Complaint. *See Ellul*, 774 F.3d at 798 n.12 (citing *Staehr*, 547 F.3d at 425). Thus, Defendant's statute of limitations arguments as to the fraud and faithless servant claims are rejected at this stage.

### E.      Faithless Servant Doctrine (Second Claim)

Defendant argues that Plaintiff's claim under the faithless servant doctrine should be dismissed because Plaintiff knew of the "alleged misconduct but continue[d]" Defendant's employment and thereby "waive[d] any claim of disloyalty under the faithless servant doctrine. (Dkt. No. 13-1, at 15). Plaintiff argues that it had no knowledge of Defendant's fraudulent conduct during the time of Defendant's employment. (Dkt. No. 16, at 16).

Defendant's argument is not persuasive. Under New York law, "an agent is obligated 'to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)). Taking the allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged that it was unaware of Defendant's alleged conduct. (Dkt. No. 12, ¶¶ 14, 16, 64). Further, Plaintiff alleges that it "uncovered" much of Defendant's conduct as a result of its "forensic accounting investigation." (*Id.* ¶¶ 22, 24, 26). Accordingly, the Court rejects Defendant's argument and denies his motion to dismiss Plaintiff's claim under the faithless servant doctrine.

### F.      Unjust Enrichment (Third Claim)

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed as "duplicative of its contract and/or tort based claims." (Dkt. No. 13-1, at 17; Dkt. No. 18, at 16). Defendant also argues that a three-year statute of limitations period applies to the unjust enrichment claim. (Dkt. No. 13-1, at 17; Dkt. No. 18, at 14). Plaintiff responds that the unjust enrichment claim is not duplicative because "the loss of any one of the elements of Plaintiff's tort claims would not preclude equitable recovery under a theory of unjust enrichment." (Dkt.

No. 16, at 18). Plaintiff also contends that the limitations period for its unjust enrichment claim is six years. (Dkt. No. 16, at 17).

### 1.      Duplication of Other Claims

As the New York Court of Appeals has explained, a claim of unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (collecting cases). Typical unjust enrichment cases "are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.*

Here, drawing all inferences in Plaintiff's favor, Plaintiff's unjust enrichment claim is not duplicative. (*See* Dkt. No. 12, ¶¶ 52–55, 58). Plaintiff could, for instance, ultimately fail to prove its fraud or conversion claims while still establishing that Defendant "received a benefit . . . that aught to in 'equity and good conscience' be turned over to [Plaintiff]." *See Nuss v. Sabad*, No. 10-cv-0279, 2016 WL 4098606, at *11, 2016 U.S. Dist. LEXIS 98529, at *33 (N.D.N.Y. July 28, 2016) (quoting *Corsello*, 967 18 N.Y.3d at 790); *Membler.com LLC v. Barber*, No. 12-cv-4941, 2013 WL 5348546, at *14, 2013 U.S. Dist. LEXIS 135862, at *40 (E.D.N.Y. Sept. 23, 2013) ("While Plaintiff's unjust enrichment and conversion claims may ultimately seek duplicative relief, at [the motion to dismiss] stage the Court will not dismiss the unjust enrichment claim."); *see also Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004) (noting that the Federal Rules "permit[] pleading inconsistent theories in the alternative"). *Corsello* is distinguishable because there, the "claims for either trespass or inverse condemnation could not fail while still permitting an unjust enrichment claim." *Nuss*, 2016 WL

4098606, at *11, 2016 U.S. Dist. LEXIS 98529, at *34 (discussing *Corsello*). That binary

situation is not presented in this case—Plaintiff's other claims could fail while Plaintiff still

recovers for unjust enrichment. Accordingly, Defendant's motion to dismiss Plaintiff's unjust

enrichment claim is denied.

### 2.   Statute of Limitations

"The statute of limitations in New York for claims of unjust enrichment . . . is generally

six years." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001); *see also Cohen v.*

*S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013). Defendant asserts that the limitations

period is three years and cites two New York state cases in support of his position—one each

from the First and Second Departments[8]—but does not provide additional analysis. (Dkt. No. 13-

1, at 17).

New York state courts are split as to whether the statute of limitations for unjust

enrichment claims is three or six years. *Deutsche Bank, AG v. Vik*, 142 A.D.3d 829, 829 (1st

Dep't 2016) (acknowledging the inter-Department "split on the issue"). However, it appears a

majority of courts conclude that a six-year limitations period applies. *See, e.g., id.* (finding the

statute of limitations for unjust enrichment to be six years); *Williams-Guillaume v. Bank of Am.,*

*N.A.*, 130 A.D.3d 1016, 1017 (2d Dep't 2015) ("The cause of action alleging unjust enrichment

is governed by the six-year statute of limitations of [N.Y. C.P.L.R. 213(1)]."); *Elliott v. Qwest*

*Commc'ns Corp.*, 25 A.D.3d 897, 898 (3d Dep't 2006) (finding unjust enrichment claim "barred

by the six-year statute of limitations" (citing N.Y. C.P.L.R. 213(1)).[9] The Second Circuit has

---

[8] The First Department case that Plaintiff cites itself cites the Second Department case without providing independent analysis. *Underground Utilities, Inc. v. Comptroller of City of New York*, 170 A.D.3d 481, 482 (1st Dep't 2019) (citing *Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007)).

[9] By contrast, state courts concluding that a three-year limitations period applies tend to apply N.Y. C.P.L.R. 214(3)). *See, e.g., Lambert v. Sklar*, 30 A.D.3d 564, 566 (2d Dep't 2006) ("The Supreme Court properly dismissed the causes

followed the majority approach. *See Cohen*, 711 F.3d at 364; *Golden Pac. Bancorp*, 273 F.3d at 518 & n.5 (collecting cases and citing N.Y. C.P.L.R. 213(1)).

Defendant does not confront this split of authority among New York courts and provides no reason to depart from the majority approach. Accordingly, the Court rejects Defendant's statute of limitations argument relating to Plaintiff's unjust enrichment claim.

### G.   Breach of Fiduciary Duty (Fifth Claim)

Defendant argues that Plaintiff's claim for breach of fiduciary should be dismissed because it is duplicative of Plaintiff's faithless servant and conversion claims. (Dkt. No. 13-1, at 8–15, 18–19; Dkt. No. 18, at 16–17). Defendant also argues that a three-year statute of limitations period applies to the breach of fiduciary duty claim. (*Id.* at 17). Plaintiff argues the claim is not duplicative and that a six-year limitations period applies. (Dkt. No. 16, at 17, 19–20).

#### 1.   Duplication of Conversion Claim

Defendant argues that Plaintiff's breach of fiduciary duty claim is duplicative of the conversion claim. In support of this argument, Defendant cites one case, *Gold Sun Shipping Ltd. v. Ionian Transp. Inc.*, 245 A.D.2d 420, 421 (2d Dep't 1997). In *Gold Sun Shipping*, the court dismissed several claims (including breach of fiduciary duty) as untimely, applying "the three-year Statute of Limitations applicable to conversion, because the legal remedy for conversion would have afforded the plaintiffs full and complete relief." *Id.* That is, the allegations there were subject to conversion's three-year limitations period because they "sounded in conversion." *Id.* The court further explained that a plaintiff could not allege a claim "merely incidental to the conversion cause of action" where the claim's "only purpose . . . is to avoid the Statute of Limitations." *Id.* Contrary to Defendant's argument, the case does not hold that a breach of

---

of action alleging conversion and unjust enrichment, as they are subject to a three-year statute of limitations" (citing N.Y. C.P.L.R. 214(3)).

fiduciary duty claim should necessarily be dismissed as duplicative of conversion. *Id.*
Accordingly, the Court rejects Defendant's argument.

### 2.      Duplication of Faithless Servant Doctrine Claim

Defendant also argues that Plaintiff's breach of fiduciary duty claim is duplicative of its
faithless servant doctrine claim. "A court may dismiss a claim as duplicative if 'relying on the
same alleged acts, the claim simply seeks the same damages or other relief already claimed in a
companion cause of action." *Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16-cv-
5211, 2018 WL 3148357, at *12 n.14, 2018 U.S. Dist. LEXIS 107902, at *32 n.14 (S.D.N.Y.
June 27, 2018) (quoting *Popal v. Slovis*, No. 12-cv-3916, 2015 WL 10687614, at *6, 2015 U.S.
Dist. LEXIS 177671, at *15 (S.D.N.Y. Apr. 28, 2015)). Here, Plaintiff seeks different relief,
including punitive damages, for the faithless servant claim than it does for its breach of fiduciary
duty claim. (Dkt. No. 12, ¶¶ 83(a), (f)). Accordingly, Plaintiff's breach of fiduciary duty claim is
not duplicative of its faithless servant claim. *See Longo v. KeyBank Nat'l Ass'n*, 357 F. Supp. 3d
263, 276 & n.11 (S.D.N.Y. 2019) (explaining that claims are not duplicative where "the potential
damages under each claim is different"). Accordingly, Defendant's motion to dismiss Plaintiff's
breach of fiduciary duty claim is denied.

### 3.      Statute of Limitations

For claims of breach of fiduciary duty, the applicable limitations period generally
"depends on the substantive remedy that the plaintiff seeks." *Matana v. Merkin*, 957 F. Supp. 2d
473, 492 (S.D.N.Y. 2013) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d
132, 139 (2009)). "Where the remedy sought is purely monetary in nature," a three-year
limitations period applies. *Id.* (quoting *IDT Corp.*, 12 N.Y.3d at 139). However, where the relief
sought is equitable" or the claim is "based on an allegation of fraud," a six-year period applies.
*Id*. The applicable limitations period "turns on the viability of plaintiffs' fraud cause of action."

*Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003); *Balta v. Ayco Co., LP*, 626 F. Supp. 2d 347, 356 (W.D.N.Y. 2009) ("[C]laims for breach of fiduciary duty that sound in fraud are subject to a six-year statute of limitations.").

The Court has already concluded that Plaintiff has viably alleged fraud with respect to the profit/loss inflation and undue reimbursement schemes. *See Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 296 (S.D.N.Y. 2019). Accordingly, the six-year limitations period applies to those allegations. However, a three-year limitations period applies to the allegations relating to Defendant's excess and otherwise unexplained compensation, which "sound[] in conversion" rather than fraud. *Gold Sun Shipping*, 245 A.D.2d at 421; *see also Balta*, 626 F.Supp.2d at 357–58 (ruling that breach of fiduciary claims based on fraud are subject to a six-year statute of limitations, whereas breach of fiduciary claims not based on fraud are subject to a three-year statute of limitations). Accordingly, Plaintiff's breach of fiduciary duty claim is dismissed as to the allegations regarding Defendant's excess and otherwise unexplained compensation for any alleged breach of fiduciary duty that occurred prior to August 30, 2016. (*See* Dkt. No. 12, ¶¶ 22–25, 65).

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 13) is **GRANTED in part**; and it is further

**ORDERED** that Plaintiff's Fraud and Deceit claim (Fourth Claim) is **DISMISSED** as to the allegations relating to Defendant's alleged "unexplained compensation" (Dkt. No. 12, ¶¶ 22-25, 65); and it is further

**ORDERED** that Plaintiff's breach of fiduciary duty claim (Fifth Claim) is **DISMISSED with prejudice** as to the allegations relating to Defendant's alleged "unexplained

compensation," (Dkt. No. 12, ¶¶ 22-25, 78), for alleged conduct prior to August 30, 2016; and it is further

      **ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 13) is otherwise **DENIED**.

      **IT IS SO ORDERED.**

Dated: April 20, 2020
      Syracuse, New York

**Brenda K. Sannes**
**U.S. District Judge**