UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HARADEN MOTORCAR CORPORATION, doing business
as Mohawk Honda,

                              Plaintiff,                1:19-cv-1079 (BKS/DJS)

v.

NICHOLAS S. BONARRIGO,

                              Defendant.
_____

NICHOLAS S. BONARRIGO,

                              Third-Party Plaintiff,

v.

BRIGITTE CHRISTENSEN, JULIE A. HARRISON,
ROBERT L. KRISTEL, C.P.A., P.C., and TEAL BECKER
& CHIARAMONTE, CPA'S, P.C.,

                              Third-Party Defendants.
_____

**Appearances:**

*For Defendant and Third-Party Plaintiff Nicholas S. Bonarrigo:*
James R. Peluso
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210

*For Third-Party Defendant Robert L. Kristel, C.P.A., P.C.:*
Cynthia E. Neidl
Greenberg Traurig, LLP
54 State Street, 6th Floor
Albany, NY 12207

*For Third-Party Defendant Julie A. Harrison:*
Aimee E. Greer
LaMarche Safranko Law, PLLC
210 Washington Avenue Extension, Suite 102
Albany, NY 12203

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Haraden Motorcar Corporation d/b/a Mohawk Honda ("Haraden") filed this diversity action against Defendant Nicholas S. Bonarrigo, alleging claims under New York law. (Dkt. No. 12 (amended complaint)). Bonarrigo subsequently filed a Third-Party Complaint against Third-Party Defendants Brigitte Christensen, Julie A. Harrison, Robert L. Kristel, C.P.A., P.C. ("Kristel"), and Teal Becker & Chiaramonte, CPA's, P.C. ("Teal Becker") for common law indemnification and contribution. (Dkt. No. 47 (amended third-party complaint ("TPC"))). In their answers, Harrison filed counterclaims and crossclaims for indemnification and contribution against Bonarrigo and the other third-party defendants, and Teal Becker filed a crossclaim for indemnification. (Dkt. No. 51, at 5–12; Dkt. No. 54, ¶ 17).

Presently before the Court is third-party defendant Kristel's motion to dismiss all claims for indemnification and contribution against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 56). Bonarrigo and Harrison opposed Kristel's motion. (Dkt. Nos. 58, 59). Kristel filed a reply. (Dkt. No. 61). For the following reasons, Kristel's motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

### A. Procedural History

In its amended complaint, Haraden asserted five causes of action arising out of Bonarrigo's employment with Haraden: conversion, violation of the faithless servant doctrine, unjust enrichment, fraud and deceit, and breach of fiduciary duty. (*See generally* Dkt. No. 12). Bonarrigo moved to dismiss the amended complaint. (Dkt. No. 13). On April 20, 2020, this Court ordered that Haraden's fraud and deceit claim was dismissed as to allegations relating to Bonarrigo's alleged "unexplained compensation" and that Haraden's breach of fiduciary duty claim was dismissed with prejudice as to allegations relating to Bonarrigo's alleged "unexplained compensation" for conduct prior to August 30, 2016, and otherwise denied Bonarrigo's motion. *Haraden Motorcar Corp. v. Bonarrigo*, No. 19-cv-1079, 2020 WL 1915125, at *12, 2020 U.S. Dist. LEXIS 68666, at *35 (N.D.N.Y. Apr. 20, 2020). Bonarrigo subsequently answered Haraden's amended complaint with counterclaims, and Haraden replied. (Dkt. Nos. 22, 28).

On December 24, 2020, Bonarrigo filed an amended TPC alleging third-party claims for indemnification and contribution against Christensen, Harrison, Kristel, and Teal Becker. (Dkt. No. 47). As relevant here, Harrison asserted counterclaims and crossclaims for indemnification and contribution against Bonarrigo and all third-party defendants, and Teal Becker asserted a crossclaim against the third-party defendants. (Dkt. Nos. 51, 54).

### B. Facts

#### 1. Haraden's Amended Complaint

The Court assumes familiarity with the facts set forth in its Memorandum-Decision and Order on Bonarrigo's motion to dismiss. *Haraden Motorcar Corp.*, 2020 WL 1915125, 2020 U.S. Dist. LEXIS 68666. The Court sets forth only a brief summary of the allegations of Haraden's amended complaint here.

3

Haraden owns Mohawk Honda, an automotive dealership in Scotia, New York. (Dkt. No. 12, ¶¶ 7–8). Haraden employed Bonarrigo as the general manager of Mohawk Honda from February 1, 2012 until August 21, 2018. (*Id.* ¶ 9). As general manager, Bonarrigo was "in control of the day-to-day affairs and operations" at Mohawk Honda. (*Id.* ¶ 10). This included control over "financial affairs" and "financial information." (*Id.* ¶ 68).

After Bonarrigo's employment with Haraden was terminated in or around August 2018, Haraden discovered "through a forensic accounting investigation" that Bonarrigo "received overpayments in compensation, commission and reimbursable expenses" that were "neither authorized nor known to [Haraden]." (*Id.* ¶ 16). Bonarrigo "caused to be entered" into Haraden's "books and records" various forms of overpayment in a deceptive way that "obscure[d]" their details. (*Id.* ¶¶ 16, 63, 66–67). Haraden alleges three broad categories of overpayment that Bonarrigo received during his employment: (1) the strategic inflation of profits and losses, (*id.* ¶¶ 18–21), (2) undue reimbursable expenses, (*id.* ¶¶ 26–31), and (3) other excess and "otherwise unexplained" compensation, (*id.* ¶¶ 22–25). More specifically, Haraden alleges that Bonarrigo was overcompensated because he inflated net profits from January to November and inflated "net losses in December," the month excluded from his commission compensation. (*Id.* ¶¶ 15–17, 42, 62). Bonarrigo accomplished this by improperly recording prepaid taxes and expenses, writing off fixed assets in December as "repairs, maintenance, [and] data processing," improperly recording depreciation expenses in December, and improperly recording payroll expenses and payroll accruals. (*See id.* ¶¶ 18, 62). As a result, Bonarrigo received $644,858 in excess commission from 2013–2018. (*Id.* ¶ 21).

Haraden also alleges that Bonarrigo "invoiced expense reimbursements without providing sufficient documentation, proof, and/or receipts to substantiate" the invoiced expenses.

4

(*Id.* ¶¶ 26, 43, 64). Bonarrigo "wrongfully received a total" of $79,405.68 in reimbursements, (*id.* ¶¶ 27–30), knowing he was "misrepresent[ing] the true value of his reimbursable expenses" during this time period, (*id.* ¶¶ 64, 66–67). Haraden's forensic accounting investigation also uncovered that Bonarrigo received $2,209 in excess compensation from 2013 to 2018 to which he was not entitled and that he received $189,111 in "otherwise unexplained compensation" from 2013–2015 to which he was not entitled. (*Id.* ¶¶ 22–25, 65). Haraden alleges that Bonarrigo "wrongfully took from [Haraden] a total of" $915,583.68 from January 1, 2013 to August 21, 2018. (*Id.* ¶ 32).

### 2. Bonarrigo's Amended TPC

As relevant to Kristel's motion, Bonarrigo's amended TPC alleges that Kristel is a "Certified Public Accounting firm" which was retained by Haraden between 2012 and 2014 "to provide accounting services." (Dkt. No. 47, ¶¶ 9–10). Kristel was retained by Haraden "to complete all standard year end accounting functions for the years 2012, 2013 and 2014." (*Id.* ¶ 11).[1] Moreover, Haraden and Kristel "entered into an agreement" whereby Kristel "agreed to provide [Haraden] with guidance and oversight regarding automotive industry accounting practices; guidance and assistance regarding audits and other tax issues; to review the accounting and bookkeeping work of [Haraden's] employees; and to prepare financial statements and tax returns." (*Id.* ¶ 31).

Bonarrigo alleges that he "was not responsible for accounting transactions and related bookkeeping functions such as the calculation and recording of payroll, depreciation, fixed assets, prepaid taxes, [and] marketable securities." (*Id.* ¶ 26). He "relied upon professional bookkeeping and accounting services" provided by the third-party defendants. (*Id.* ¶ 27).

---

[1] Teal Becker provided these services to Haraden for years 2015–2018. (*See id.* ¶¶ 14–15).

Moreover, Kristel "was responsible for, directed, oversaw, supervised, and ratified all of the" actions or omissions Haraden alleges against Bonarrigo. (*Id.* ¶ 32).

Bonarrigo alleges that the "third-party defendants performed, were responsible for, oversaw, directed, exercised actual supervision of, or controlled" the acts or omissions alleged by Haraden. (*E.g.*, *id.* ¶ 43). The amended TPC alleges that these acts or omissions include the conduct alleged in Haraden's amended complaint, and then lists the conduct of which Haraden complains. (*Id.* ¶ 43a–l; *compare* Dkt. No. 12, ¶ 18a–i, *with* Dkt. No. 47, ¶ 43a–l).

The amended TPC also alleges that the third-party defendants "owed a general duty of care" to Haraden and Bonarrigo in the performance of their services and owed a "fiduciary duty" to Haraden. (Dkt. No. 47, ¶¶ 44–45). Further, "[t]o the extent [Haraden's] allegations are true," the improper conduct "was the proximate result of the third-party defendant[s'] breach of their aforesaid duties." (*Id.* ¶¶ 47, 60). Bonarrigo also alleges that, "[i]f the allegations in [Haraden's] complaint are true, the acts or omissions alleged" against Bonarrigo "were caused in whole or in part, or were contributed to, by the fault or other culpable conduct of third-party defendants." (*Id.* ¶ 53.)

### 3. Harrison's Crossclaims

From approximately April 30, 2014 to November 1, 2018, Harrison was employed by Haraden in the "successive positions" of Office Manager, Assistant Controller, and Controller. (*Id.* ¶ 7; Dkt. No. 51, ¶ 2). Harrison's counterclaims and crossclaims largely mirror the allegations in Bonarrigo's amended TPC. (*See generally* Dkt. No. 51). Harrison alleges that if the allegations of the amended TPC are true, "the acts or omissions alleged against [her] were caused in whole or in part, or were contributed to, by the fault or other culpable conduct" of Bonarrigo and the other third-party defendants. (*Id.* ¶ 22). Harrison alleges she "relied upon the professional bookkeeping and accounting services" of the other third-party defendants, (*id.* ¶ 23), and that

Bonarrigo, Christensen, Teal Becker, and Kristel are the ones who "performed, were responsible for, oversaw, directed, exercised actual supervision of, or controlled the alleged acts or omissions" of Harrison, (*id.* ¶¶ 24–25). Harrison alleges that Bonarrigo and the other third-party defendants "owed a general duty of care" to her and Haraden and a fiduciary duty to Haraden. (*Id.* ¶¶ 26–27). Harrison alleges that, if Bonarrigo's allegations are true, the improper conduct was the proximate result of the others' breach of duty. (*E.g.*, *id.* ¶ 29).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claimant must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the claimant's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   Letter Agreements Submitted with Kristel's Motion

Kristel asks the Court to consider copies of letter agreements between Kristel and Haraden dated January 1, 2013, January 1, 2014, and January 22, 2015, detailing the nature of Kristel's engagement and the services it would provide Haraden, which it submitted with its motion to dismiss. (*See* Dkt. Nos. 56-1 to 56-4). Bonarrigo and Harrison both object to the Court's consideration of the agreements on the ground that they are not integral to the amended

TPC and may not reflect the scope of Kristel's services, a point on which discovery is necessary. (Dkt. No. 58, at 7–8; Dkt. No. 59, at 15).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The Court declines to consider the letter agreements between Kristel and Haraden submitted with Kristel's motion to dismiss. The amended TPC asserts that Kristel and Haraden "entered into an agreement" by which Kristel would provide certain services, (Dkt. No. 47, ¶ 31), but even assuming this assertion is sufficient to incorporate the letter agreements by reference, *see McLennon v. City of New York*, 171 F. Supp. 3d 69, 88–89 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (internal quotation marks and citation omitted)), or to "render[] the document[s]

8

integral to the complaint," *Nicosia*, 834 F.3d at 230, the scope of Kristel's agreement with and its obligations to Haraden are at issue. Bonarrigo asserts that he is "not in possession of any records" of Haraden or Kristel and that he should be allowed to conduct discovery "on the scope and involvement of Kristel's CPA accounting services." (Dkt. No. 59, at 15). Similarly, Harrison argues that there are factual issues regarding the "scope of [Kristel's] work and responsibilities" which are the proper subject of discovery. (Dkt. No. 58, at 7–8). Accordingly, because there are "material disputed issues of fact regarding the relevance of the document[s]," *Faulker*, 463 F.3d at 134, the Court declines to consider the letter agreements.[2]

### B.      Indemnification Claims

#### 1.      Bonarrigo's Claim

Kristel argues that the indemnification claim asserted against it by Bonarrigo should be dismissed because (1) common law indemnification under New York law is available only when the claimant has been held vicariously liable for the actions of the proposed indemnitor; (2) common law indemnification under New York law is available only when the party seeking it is without actual fault; and (3) Bonarrigo's claim is based on conclusory, unsupported, and implausible allegations. (Dkt. No. 56-5, at 5–6, 10–12). Bonarrigo responds that the amended TPC alleges that he was not responsible for the improper accounting practices alleged by Haraden, and that indemnification claims are not limited to situations involving vicarious liability and absence of fault on the part of the proposed indemnitee. (Dkt. No. 59, at 11–14).

---

[2] Additionally, and for similar reasons as articulated in the Court's Memorandum-Decision and Order on Bonarrigo's motion to dismiss Haraden's amended complaint, *see Haraden Motorcar Corp.*, 2020 WL 1915125, at *3–4, 2020 U.S. Dist. LEXIS 68666, at *7–11, the Court declines to consider the facts Bonarrigo cites to in his opposition which are contained in other extraneous documents. (*See, e.g.*, Dkt. No. 59, at 4 (citing declarations of Bonarrigo and Harrison submitted in connection with Bonarrigo's motion to dismiss)). Rather, the Court will decide the present motion on the merits of the amended TPC itself and the documents attached to it. (*See* Dkt. No. 47, at 16–36 (attaching Haraden's amended complaint), 38–52 (attaching Bonarrigo's answer with counterclaims), 54–63 (attaching Haraden's reply to Bonarrigo's counterclaims)).

Under New York law, the right to indemnification operates to shift liability from one party to another and arises from either an express or implied contract. *McDermott v. City of New York*, 50 N.Y.2d 211, 216 (1980).[3] Absent an express contract, the general rule is that where "payment by one person is compelled, which another should have made or which redounds solely to the benefit of another, a contract to reimburse or indemnify is implied by law." *Brown v. Rosenbaum*, 287 N.Y. 510, 518–19 (1942). Implied (common law) indemnification "is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369, 375 (2011) (quoting *Mas v Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990)); *Amguard Ins. Co. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 220 (S.D.N.Y. 2015). In a "classic indemnification case," the party seeking common-law indemnification has "committed no wrong," but has been held liable or exposed to liability to the injured party "by virtue of some relationship with the tort-feasor or obligation imposed by law." *Glaser v. M. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643, 646 (1988); *see also D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 461 (1982). "[T]he predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee," and for that reason, "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff." *Firestone v. Berrios*, 42 F. Supp. 3d 403, 421 (E.D.N.Y. 2013) (first quoting *Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996); and then quoting *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453 (1st Dep't 1985)); *see McCarthy*, 17 N.Y.3d at 375 (explaining that common-

---

[3] The present case does not involve any claims for express contractual indemnification.

10

law indemnification is typically only available to a party who is held liable solely by operation of law or vicarious liability).

Kristel and Bonarrigo disagree on whether common law indemnification is available only in cases where the party seeking indemnification has been held "vicariously liable" for the wrongdoing of another party. (*See* Dkt. No. 56-5, at 10–11; Dkt. No. 59, at 12–13). While vicarious liability is a common "predicate" of common law indemnification, *Firestone*, 42 F. Supp. 3d at 421, it is true that indemnity may also be premised on theories such as strict product liability and breach of warranty, *Girau v. Europower, Inc.*, No. 10-cv-4320, 2015 WL 4533783, at *5, 2015 U.S. Dist. LEXIS 97530, at *12 (S.D.N.Y. July 24, 2015). However, the basis underlying all of these grounds for indemnity is that the liability of the party seeking indemnification is imposed by "imputation of law." *Metro. Transp. Auth. v. Systra Consulting Inc.*, No. 07-1010, 2008 WL 11438071, at *5, 2008 U.S. Dist. LEXIS 144257, at *14–15 (E.D.N.Y. Dec. 30, 2008). Here, Bonarrigo has not alleged how he could be held liable to Haraden, by imputation of law, for any of Kristel's conduct or omissions.

Moreover, indemnification is not available for parties who have participated in the wrongdoing. *See, e.g.*, *Monaghan*, 73 F.3d at 1284 ("New York case law supports a proposition . . . that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff."). Bonarrigo relies on *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680 (1990), in an attempt to argue that indemnity may be available to a party who is found to be partially at fault. (Dkt. No. 59, at 12–13). In *Mas*, which involved an elevator accident, the jury apportioned 5% of the fault to the plaintiff for comparative negligence, 10% to the owner of the building for failure to provide assistance, and 85% to both the owner and the company contracted to maintain the elevator for failure to

maintain and repair. 75 N.Y.2d at 684. The Court of Appeals held that the company's duty to indemnify the owner for failure to maintain and repair, according to their prior agreement, was not foreclosed by the finding that the owner "was also guilty of primary negligence on a separate theory of liability." *Id.* at 689–91. The basis for this holding was that the owner's liability for failure to maintain and repair was not based on its own negligence, but only arose from a non-delegable duty statutory duty to the plaintiff—i.e., arose only by "imputation of law." *See Metro. Transp. Auth.*, 2008 WL 11438071, at *5, 2008 U.S. Dist. LEXIS 144257, at *14–16 (rejecting an attempt to rely on *Mas* for the proposition that indemnification is proper even where the party seeking it is liable for some other, related wrong).

Here, the allegations in Bonarrigo's amended TPC deny his liability for the acts and claims brought against him by Haraden. (*E.g.*, Dkt. No. 47, ¶ 51). However, his indemnification claims are predicated on his being found liable to Haraden. (*E.g.*, *id.*). The Court finds that Bonarrigo has not adequately pled how he could be found free from fault and yet still be held liable for damages to Haraden for any acts or omissions on the part of Kristel. *Cf. Girau*, 2015 WL 4533783, at *5, 2015 U.S. Dist. LEXIS 97530, at *13–14 (finding the third-party plaintiff did allege a plausible indemnification claim where it "sufficiently alleged how it 'could be found free from fault and at the same time liable for damages' to Plaintiff"). Haraden has asserted claims of conversion, violation of the faithless servant doctrine, unjust enrichment, fraud and deceit, and breach of fiduciary duty against Bonarrigo. (*See generally* Dkt. No. 12 (amended complaint)); *Haraden Motorcar Corp.*, 2020 WL 1915125, 2020 U.S. Dist. LEXIS 68666 (order on motion to dismiss the amended complaint). A finding that Bonarrigo is liable to Haraden will necessarily entail a finding that Bonarrigo engaged in tortious behavior, rendering Bonarrigo unentitled to indemnification, and a finding that Bonarrigo is not liable to Haraden will obviate

his need for indemnification.[4] *See Metro. Transp. Auth.*, 2008 WL 11438071, at *6, 2008 U.S. Dist. LEXIS 144257, at *17–18 (dismissing third-party indemnification claims because if the jury found in favor of the third-party plaintiff, "it will not be entitled to—or need—indemnification," and if the jury found the third-party plaintiff liable to the plaintiff, "then the jury will have determined that [the third-party plaintiff] was actively negligent, and so it cannot obtain indemnification from a third-party"); *see also Eisman v. Village of E. Hills*, 149 A.D.3d 806, 808 (2d Dep't 2017) (holding that the trial court should have dismissed a third-party indemnification claim where the party seeking indemnification could "not be held vicariously or statutorily liable for any negligence of any of the third-party defendants"); *Chatham Towers, Inc. v. Castle Restoration & Constr., Inc.*, 151 A.D.3d 419, 420 (1st Dep't 2017) (holding common law indemnification claim was properly dismissed where the plaintiff sought recovery based on the defendant's "alleged wrongdoing" and "not vicariously because of any negligence on the part of" the proposed indemnitor).

In sum, Bonarrigo has not adequately pleaded how he could be held liable for Kristel's conduct by operation of law, nor has he adequately pleaded how he could be found free from fault while simultaneously still being found liable for damages. Accordingly, Bonarrigo's third-party claim for indemnification against Kristel is dismissed.

### 2. Harrison's Claim

Kristel argues that the indemnification crossclaim asserted against it by Harrison should be dismissed because it is "predicated on Bonarrigo's deficient allegations" and offers "no

---

[4] It is possible that Bonarrigo could be held liable under a theory of unjust enrichment to pay back to Haraden the excess compensation he received to which he was not entitled without a finding that he committed a tort. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (noting that a typical unjust enrichment case is one in which "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled"). However, in that situation, Bonarrigo would be liable to repay money which he was not entitled to receive, not for damages for which Kristel should bear responsibility. Accordingly, indemnification would not be proper.

factual basis for imposing liability on Kristel." (Dkt. No. 56-5, at 6). Harrison responds that it is reasonable to infer that Kristel owes a duty to indemnify her because she "stood to benefit immediately from the services performed by a certified professional accountant which were provided" to Haraden. (Dkt. No. 58, at 8–9).

Kristel and Harrison agree that, to sustain a viable common law indemnification claim, there must be "some duty to indemnify [existing] between" the parties. *See Amguard*, 147 F. Supp. 3d at 220 (citations omitted). The duty to indemnify is one that runs from the indemnitor to the indemnitee. *Id.* at 220–21 (citations omitted). Relying on *Amguard*, Harrison suggests that she was an intended beneficiary of the services provided by Kristel to Haraden. (Dkt. No. 58, at 8–9). However, Harrison's crossclaim does not allege that she was a third-party beneficiary of Kristel's engagement by Haraden. Even if it did, the Court finds implausible the suggestion that any agreement between Haraden and Kristel was "intended for" Harrison's benefit as one of Haraden's employees, in a "sufficiently immediate, rather than incidental" way. *Cf. Amguard*, 147 F. Supp. 3d at 222–23 (listing the requirements to state a claim as a third-party beneficiary and finding that a property owner plausibly alleged it was an intended third-party beneficiary of a contract between its easement holder and a tree service company). Without alleging a "special relationship" between herself and Kristel, Harrison cannot maintain a common law claim for indemnification. *See, e.g.*, *Ainette v. Market Basket, Inc.*, No. 19-cv-4506, 2021 WL 1022590, at *10, 2021 U.S. Dist. LEXIS 49832, at *28–29 (S.D.N.Y. Mar. 16, 2021) (dismissing third-party common law indemnification claims where the third-party plaintiffs "have not made even the barest suggestion that they had any 'special relationship'" with the third-party defendants that could give rise to an "implied duty to indemnify"). Accordingly, Harrison's crossclaim for indemnification against Kristel is dismissed.

### C. Contribution Claims

Kristel argues that the contribution claims asserted against it by Bonarrigo and Harrison should be dismissed because neither party plausibly alleged facts showing that Kristel was negligent or otherwise breached a duty to Haraden or that Kristel's conduct "caused or contributed to" Haraden's injuries. (Dkt. No. 56-5, at 13–15). Harrison responds that her allegations raise a plausible claim for contribution. (Dkt. No. 58, at 9–10). Bonarrigo responds that the amended TPC states a plausible claim for contribution and gives Kristel fair notice of the claims against it. (Dkt. No. 59, at 14–19).

Unlike indemnification, contribution generally operates to apportion liability among tortfeasors, regardless of the underlying theory of liability. *McDermott*, 50 N.Y.2d at 216. "[W]here a party is held liable at least partially because of its own [tortious conduct], contribution against other culpable tort-feasors is the only available remedy." *Glaser*, 71 N.Y.2d at 646. "The right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." *Trustees of Columbia Univ.*, 109 A.D.2d at 454. This is true "regardless of whether the parties are joint tort-feasors, or whether they are liable under different theories, so long as their wrongdoing contributes to the damage or injury involved." *Id.* (first citing *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253 (1983); and then citing *Schauer v. Joyce*, 54 N.Y.2d 1 (1981)). Thus, to prevail on their contribution claims against Kristel, Bonarrigo and Harrison would have to show that Kristel owed a duty to Haraden or to them, and by breaching that duty it contributed to Haraden's injuries. *Trustees of Columbia Univ.*, 109 A.D.2d at 454.

The Court finds that Bonarrigo and Harrison have stated viable contribution claims against Kristel. As an initial matter, Kristel does not dispute that it owed a duty to Haraden in the

15

performance of its services. (Dkt. No. 61, at 10). Moreover, Bonarrigo and Harrison plausibly allege that Kristel breached a duty owed to Haraden, because Kristel "performed, [was] responsible for, oversaw, directed, exercised actual supervision of, or controlled" the conduct at issue in this case, including carrying an "excessive and inappropriate amount of prepaid taxes and expenses on balance sheets from January to November," overstating fixed assets, and improperly recording depreciation expenses, payroll expenses, and payroll accruals. (Dkt. No. 47, ¶ 56; *see* Dkt. No. 51, ¶ 38). Because Kristel's engagement including "review[ing] the accounting and bookkeeping of [Haraden's] employees" and "prepar[ing] financial statements and tax returns," (Dkt. No. 47, ¶ 31), it is plausible that Kristel's breach of duty played some role in these improper accounting methods or the fact that they went undetected for a number of years, contributing to Haraden's total injury. *Cf. Marchiano v. Berlamino*, No. 10-cv-7819, 2011 WL 4829931, at *2, 2011 U.S. Dist. LEXIS 117863, at *4 (S.D.N.Y. Oct. 11, 2011) (finding a plausible third-party contribution claim where the third-party complaint pled "sufficient facts to plausibly establish that [the third-party defendant] played *some* role" in the challenged conduct). Thus, it is plausible that Kristel breached a duty owed to Haraden and that the breach caused or contributed to Haraden's injury, precluding dismissal at this stage. *Cf. Girau*, 2015 WL 4533783, at *6, 2015 U.S. Dist. LEXIS 97530, at *15–16 (finding the third-party plaintiff alleged plausible contribution claim where it alleged that "the defective hydraulic hose assembly 'designed, manufactured and assembled' by the [third-party defendants] 'was a substantial factor in causing Plaintiff's alleged injuries'" and "how the purported defect contributed to Plaintiff's alleged injuries") (emphasis omitted).

Accordingly, Kristel's motion to dismiss the contribution claims asserted against it by Bonarrigo and Harrison is denied.

### D. Teal Becker's Claims

Teal Becker's answer to the amended TPC includes a crossclaim which is captioned as a crossclaim against all of the other third-party defendants, including Kristel. (Dkt. No. 54, ¶ 17). The claim, however, appears to seek indemnification from the third-party plaintiff: the entirety of Teal Becker's crossclaim reads: "To the extent that the answering third-party defendants are liable to the plaintiff for any losses, due to any claims of negligence or unintentional acts, the Third Party Plaintiff herein, must indemnify the answering third-party defendant for any losses based on the intentional nature of the claims made against the Third-Party Plaintiff." (*Id.*). Kristel moved to dismiss any indemnification or contribution crossclaims asserted against it by Teal Becker for substantially the same reasons as it moved to dismiss the claims by Bonarrigo and Harrison. (*See generally* Dkt. No. 56-5). Teal Becker did not respond to Kristel's motion. Accordingly, Teal Becker has abandoned any indemnification and/or contribution claim against Kristel. *See, e.g.*, *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, No. 11-1638, 2012 WL 612358, at *14, 2012 U.S. Dist. LEXIS 25553, at *38 (S.D.N.Y. Feb. 23, 2012) (deeming a third-party claim for indemnification or contribution abandoned where the claimant did not oppose the motion to dismiss); *Ilkowitz v. Durand*, No. 17-cv-773, 2018 WL 1595987, at *12, 2018 U.S. Dist. LEXIS 51946, at *36 (S.D.N.Y. Mar. 27, 2018) (same).

Even if Teal Becker has not abandoned any indemnification and/or contribution claim against Kristel, dismissal would still be warranted because Teal Becker's answer sets forth no facts which might state a plausible claim for indemnification and/or contribution against Kristel. (*See generally* Dkt. No. 54); *see also Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d

251, 269–70 (S.D.N.Y. 2000) (holding that the allegation that, if the defendant were found liable, it would be "entitled to indemnification and/or contribution" failed to state a plausible claim). Accordingly, any claims asserted by Teal Becker against Kristel for indemnification and/or contribution are dismissed.

V.     **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Bonarrigo's and Harrison's claims for indemnification against Kristel are **DISMISSED**; and it is further

**ORDERED** that Teal Becker's claims for indemnification and/or contribution against Kristel are **DISMISSED**; and it is further

**ORDERED** that Kristel's motion to dismiss (Dkt. No. 56) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: October 21, 2021
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge